### † CALL *versus* CARROLL.

Where the upland, on the shore of a river subject to the flux and reflux of the tide, has been run out into lots, the flats appurtenant, when not otherwise settled by the owners, must be divided, under the operation of the Colonial Ordinance of 1641, according to the principle recognized in the case of *Emerson* v. *Taylor*, 9 Greenl. 42.

And where such original lots are *subdivided*, without any stipulations as to the flats, the division of the latter, as between the vendor and vendee, must be governed by the same rule, but in no event to affect the flats of adjacent proprietors.

ON REPORT from *Nisi Prius*, HATHAWAY, J., presiding.

CASE, for damages alleged to be caused by defendant's boom.

The plaintiff was owner of a portion, and tenant of the remainder, of the premises described in his writ.

Defendant occupied a dock southerly of and adjoining the plaintiff's dock. Against his dock the defendant has a boom, which when at rest is in the right place, but when the tide sets up stream, it floats up twenty-four feet at the extreme outer part in tide-waters, above its resting place; and when the tide ebbs, it floats thirty-five and one-half feet below its resting place.

In 1801, the upland, including that of the parties, was run out into lots. The lots numbered 13 and 14 have since been subdivided, and the question here arises as to the proper division of the flats appurtenant to the respective owners of adjacent portions of these two lots.

A plan was before the Court, but the matter will be readily apprehended without a diagram.

It was agreed to submit the case to the decision of the Court upon the evidence, to be decided according to the legal rights of the parties; if a default should be entered, the damages to be assessed by the clerk.

*W. Fessenden*, for defendants, contended, that the principles of equity should govern cases of this description, and that no general rule can be laid down which will apply to all cases. The decision of *Emerson* v. *Taylor*, 9 Greenl. 42, was not a guide. The proper construction of the Colonial Ordinance was given by the Courts of Massachusetts in *Valentine* v. *Piper*, 22 Pick. 89, and *Gray* v. *Deluce & al.*, 5 Cush. 9.

That if our Courts followed the rule in the case alluded to, the owners of flats were liable to be divested of them in every division of the lots.

That where the flats lie within a cove as in this case, the principle of *Gray* v. *Deluce & al.*, was the only one that could do justice to the parties.

Call *v.* Carroll.

That the principal use of these flats was for the booming of timber and rafts, and if the booms must be hung according to the rule in *Emerson* v. *Taylor*, it would be inconvenient to all parties. They should be hung at right angles to the current of the river, but cannot be so done unless the Massachusetts rule is adopted.

*J. A. Peters*, for plaintiff, relied on *Emerson* v. *Taylor*, as furnishing the rule in this case, and also cited *Treat* v. *Chipman*, 34 Maine, 34.

APPLETON, J. — In the case of *Emerson* v. *Taylor*, 9 Greenl. 42, this Court established a rule for the ascertainment of the side lines of water lots from the upland to the low water mark under the Colonial Ordinance of 1641, which has since been adhered to in this State. In that decision the Court say they are not aware of any cases in which this mode of apportioning appurtenant flats among contiguous owners of the upland would not be applicable, but if any such case should occur requiring the application of a new principle it must be applied.

In 1801 the lots on the river were run out and a division of the upland was then made. Those lots then run out have since been subdivided. The controversy in this case arises between the respective owners of adjacent portions of the original lots Nos. 13 and 14.

When the land of the Commonwealth of Massachusetts was first run out into lots, whatever rule is to be regarded as applicable to the division of flats, by that rule, certain flats were given to and required by each lot of the upland thus divided. The flats appertaining to each lot consequent upon such division, were as much parts of the original lots as the uplands, — and when granted, were as much included in the terms of the grant, if that followed the original location, as the upland.

If the division of the shore into lots were to be regarded as cotemporaneous, the rule adopted in *Emerson* v. *Taylor*,

most obviously commends itself as of the highest equity between conflicting parties.

If the original lots are subdivided, then the question occurs, to what extent and how far is the rule there established, to be regarded as applicable to the smaller lots into which the original lot may have been subdivided.

When the shore is straight, no difficulty is likely to arise as to the proper application of the Colonial Ordinance. But each stream has its curvatures and sinuosities, and it frequently becomes a matter of grave moment and great nicety to determine how the division of the flats is to be affected by such curvatures and sinuosities.

It is apparent when the shore is curved that the base line of lots will vary according to each division or subdivision of the upland and that the flats will vary according to each base line arising and consequent upon such division and subdivision.

The flats of a lot as established by the original and cotemporaneous division of the upland cannot be altered or changed by each subdivision. If it were so, the flats would be a variable quantity, increasing or diminishing with the increase or decrease of adjacent lots as they might be affected by the base lines of each new and lesser or larger lot. If it were, an owner of a lot, by sale or by purchase might vary the base line of his lot, and by claiming flats according to such new base line appropriate to himself a portion of flats which previous to such change of the size of his lot, had belonged to an adjacent proprietor.

The principle of *Emerson* v. *Taylor* applies when the lots are all run out at the same time. When original lots are subdivided, it may be regarded as a satisfactory rule for dividing the flats at the point of division, and as between the vendor and vendee; but it cannot be so construed as to affect the flats of adjacent proprietors.

The division of the uplands appears to have been made in 1801, and the flats of the lots then run out must be ascertained by the application of the principle of *Emerson* v.

*Taylor.* The flats, as thus established, remain and must remain unaffected by the subdivisions of the original lots. The owners of lots 13 and 14, by the subdivisions of their lots, could neither enlarge their own flats, nor diminish those of the adjacent proprietors, by any acts of theirs. The lots in dispute are adjacent parts of these lots, and the flats at the point of division of these portions of the original lots must be regarded as identical with the flats of those lots and as unchanged by the divisions which have taken place since their location. According to these principles, the plaintiff is entitled to recover. *Defendant defaulted.*